IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| STEFANIE RAINWATER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:20-CV-03055-DGK |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

This action seeks judicial review of the Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Stefanie Rainwater's application for Social Security Disability benefits and Supplemental Security Income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401–434; 1381–1385. The Administrative Law Judge ("ALJ") found Plaintiff had the severe impairment of migraine headaches, however, she retained the residual functional capacity ("RFC") to perform work at all exertional levels with certain non-exertional limitations and was capable of performing past relevant work

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed her application for benefits on May 31, 2017, alleging a disability-onset date of August 19, 2016. She later amended her alleged onset date to August 21, 2016. The

Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ.  The ALJ held a hearing and, on June 20, 2019, issued a decision finding Plaintiff was not disabled.  The Appeals Council denied Plaintiff's request for review on January 21, 2020, leaving the ALJ's decision as the Commissioner's final decision.  As Plaintiff has exhausted all administrative remedies, judicial review is now appropriate under 42 U.S.C. §§ 405(g) and 1383(c)(3).

**Standard of Review**

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole and whether the ALJ committed any legal errors.  *Igo v. Colvin,* 839 F.3d 724, 728 (8th Cir. 2016).  Substantial evidence is less than a preponderance but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision.  *Id.*  In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it.  *Id.*  The court must "defer heavily" to the Commissioner's findings and conclusions.  *Wright v. Colvin, 789 F.3d 847, 852* (8th Cir. 2015); *see Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (noting the substantial evidence standard of review "defers to the presiding ALJ, who has seen the hearing up close").  The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome.  *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

2

**Discussion**

The Commissioner follows a five-step evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). Plaintiff argues the ALJ erred at step four because the RFC is not supported by substantial evidence. Plaintiff's arguments revolve around her allegation that her migraines force her to lie in a dark room and miss work multiple days per month. She argues that, because the RFC did not account for these days when she cannot work, the ALJ failed to take relevant evidence into account in formulating her RFC. Second, Plaintiff argues the ALJ did not adequately explain why she found the testimony of her primary physician, Dr. Linda Morgan, M.D., "somewhat persuasive" while nonetheless finding that Plaintiff would not need to miss work. Plaintiff's arguments are unavailing.

1. **The ALJ took relevant medical and opinion evidence into account when she formulated the RFC.**

The ALJ found that Plaintiff can perform a full range of work at all exertional levels, but with the following non-exertional limitations: she can never climb ladders, ropes, or scaffolds, can occasionally balance, should avoid "even occasional exposure to pulmonary irritants," and "must avoid all exposure to dangerous moving machinery and unprotected heights." R. at 16. Plaintiff complains that the RFC finding is not supported by substantial evidence because the ALJ

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) [her] impairments, alone or combined, are medically severe; (3) [her] severe impairments meet or medically equal a listed impairment; (4) [her] residual functional capacity precludes [her] past relevant work; and (5) [her] residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 416.920(a)–(g). Through step four of the analysis the claimant bears the burden of showing she is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

formulated the RFC without accounting for all relevant evidence. Specifically, Plaintiff argues that "the ALJ did not include in the finding of residual functional capacity an inability by Plaintiff to attend work, i.e. that Plaintiff would miss work because of migraine headaches" (Doc. 15 at 13).

An RFC evaluation is not supported by substantial evidence if the ALJ formulates an RFC evaluation without accounting for all relevant evidence. *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence . . . ."). Relevant evidence includes "medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013). Plaintiff argues that the RFC "does not reflect any consideration of the medical opinion testimony or statements of the Plaintiff as to a need to miss work because of migraines" (Doc. 15 at 15). However, the record shows the ALJ accounted for this relevant evidence.

The ALJ considered the relevant medical opinion testimony in making the RFC evaluation. The ALJ discussed Dr. Morgan's opinion regarding the frequency of Plaintiff's migraines and whether they required her to remain in a dark room. In response to an interrogatory from Plaintiff's attorneys, Dr. Morgan stated that Plaintiff likely suffered from ten migraines per month and that migraine patients often must lie in a dark room for varying amounts of time. R. at 20–21. The ALJ determined that Dr. Morgan's opinion that Plaintiff suffered from ten migraines per month on average was based "only on the claimant's subjective report to her attorneys as outlined in the interrogatory posed to Dr. Morgan." R. at 21. The ALJ also determined that Dr. Morgan's records show that Plaintiff never reported to her that she must lie in a dark room a majority of the time. R. at 21. Ultimately, the ALJ found that Dr. Morgan's opinion was "somewhat persuasive," R. at 21, despite later finding based on other evidence in the record that Plaintiff "has the residual functional

4

capacity to perform a full range of work at all exertional levels" with the non-exertional limitations stated above. R. at 13.

The ALJ also accounted for Plaintiff's statements that migraines would force her to miss work: "[t]he claimant's subjective reports of frequency and intensity must be considered and at the hearing, the claimant testified that she has at least 4 migraines a month, lasting between 2 days and three weeks—and that on those days she is unable to leave a darkened room." R. at 19. The ALJ ultimately discounted Plaintiff's statement that she had to stay in a darkened room for multiple reasons, including that Plaintiff changed her testimony to state that she is only confined to a dark room between ten and 22 days per month after the ALJ noted her testimony indicated that she is confined to a dark room 28 days per month. R. at 18. Further, the ALJ observed there is no evidence in the record that Plaintiff ever sought emergency room treatment for migraines; she did not see a neurologist about the migraines until nearly two years after the alleged onset date and had only seen the neurologist four times before the hearing; she only briefly took migraine medication prescribed by her neurologist and then stopped; she declined Botox injections recommended by her neurologist to control migraines; and she reported her menstrual cycles as a trigger for her migraines but had recently undergone a hysterectomy. R. at 18–19. The ALJ also noted that Plaintiff's non-compliance with treatment recommendations evidenced that "the claimant does not believe that her impairments are as debilitating as she has claimed them to be." R. at 19.

Based on this record, the Court concludes that the ALJ did not err in taking the relevant medical evidence and Plaintiff's own statements into account in formulating the RFC.

5

### 2. Substantial evidence supports the ALJ's RFC evaluation.

Plaintiff also argues that the ALJ failed to adequately explain why she found Dr. Morgan's statement that Plaintiff would need to lie in a dark room for 10 days per month on average "somewhat persuasive" while not finding that Plaintiff's migraines would force her to miss work (Doc. 15 at 16). As a threshold matter, the Court is not convinced that the ALJ failed to adequately explain her finding. She explained why she found Dr. Morgan's testimony only "somewhat persuasive," R. at 19–20, and then compared evidence that was both favorable and unfavorable to Plaintiff in determining the RFC. R. at 22. The ALJ is required to weigh the evidence, and the fact that she found Dr. Morgan's testimony somewhat persuasive did not also require her to explain why she did not find that Plaintiff's migraines force her to miss multiple days of work per month.

However, even if the ALJ did not adequately explain her finding, "an ALJ's failure to adequately explain [her] factual findings is not a sufficient reason for setting aside an administrative finding where the record supports the overall determination." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008). Remand is only appropriate on this basis "where the ALJ's factual findings, considered in light of the record as a whole, are insufficient to permit [a reviewing court] to conclude that substantial evidence supports the Commissioner's decision." *Id.* Substantial evidence supports the ALJ's RFC evaluation.

Substantial evidence supports the ALJ's RFC evaluation. The ALJ noted that medical evidence and other evidence in the record is inconsistent with Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her migraines, and that the evidence does not support Plaintiff's alleged loss of functioning. R. at 17. The ALJ noted, and the record shows, that in July 2015 Plaintiff told Dr. Morgan that her migraines were "manageable" and only occurred three to four times per week due to treatment with Topamax and Imitrex. R. at 17, 322. During the same

visit, Plaintiff also told Dr. Morgan that she was able to exercise five to seven days per week. R. at 17, 322. On November 5, 2015, Plaintiff told her primary care physician that Topamax worked well to treat her headaches. R. at 359. During that visit, Plaintiff also stated that migraines occurred before her menstrual cycle, R. at 356, and later reported that birth control pills helped her migraines. R. at 18, 349. Additionally, Plaintiff reported in April 2016 that she no longer got migraines as badly as she had previously. R. at 347. The ALJ noted that an MRI of Plaintiff's brain, conducted on February 21, 2017, found no abnormalities other than a stable benign meningioma. R. at 18, 332–33, 557. The ALJ also noted that Plaintiff met with Dr. Lirong Zhu, M.D., a neurologist, on June 11, 2018, complaining of severe headaches on 25 out of the prior 30 days. R. at 19, 549. The ALJ found, and the record supports, that Plaintiff's neurological examination was within normal limits. R. at 20, 555. Plaintiff met with Dr. Zhu again on September 18, 2018, and complained of having migraines on 67 of the prior 90 days. R. at 20, 597. A neurological examination conducted at this visit also indicates that Plaintiff was within normal limits. R. at 20, 601.

The ALJ also noted that, despite Plaintiff's allegation of the frequency and severity of her migraines, there were significant gaps in Plaintiff's medical treatment history. R. at 18–19. *See Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014) (noting that an ALJ may discredit a claimant's complaints of pain "if the claimant does not seek regular medical treatment"). For example, on January 1, 2016, plaintiff began working as a contract secretary for her friend's business. She sought no medical treatment between April and August of 2016, yet quit her job on August 19, 2016, claiming that migraines forced her to stop working. R. at 192, 198. The ALJ found that Plaintiff did not seek medical treatment again until February 10, 2017, six months after quitting her job. R. at 18. Plaintiff's medical record supports this conclusion, as it contains no progress

7

notes between April 4, 2016, and February 10, 2017. R. at 346–49. Additionally, Plaintiff did not start seeing Dr. Zhu for nearly two years after her alleged onset disability date of August 21, 2016, and only saw Dr. Zhu four times before the hearing. R. at 18, 549. The ALJ also noted that there was no evidence that Plaintiff had ever gone to the emergency room for migraine treatment. R. at 18.

The ALJ also noted that Plaintiff's own behavior regarding her medical treatment indicated that her migraines are not as intense, frequent, or debilitating as she has alleged. *See* 20 C.F.R. § 416.930 (noting that failure to follow prescribed treatment without a good reason is grounds on which to deny benefits). For example, in April 2017, Plaintiff's physician prescribed amitriptyline to control her migraines. R. at 343–45. Plaintiff never took the amitriptyline. R. at 340. Further, on September 18, 2018 Dr. Zhu prescribed Plaintiff propranolol in addition to verapamil and progesterone and advised Plaintiff to taper up the use of propranolol if her blood pressure and heart rate dropped.[2] R. at 596. Plaintiff later reported that propranolol lowered her blood pressure, and rather than adjust medications as Dr. Zhu had ordered, discontinued using propanolol. R. at 619. Additionally, Plaintiff declined Botox injections to treat her migraines on multiple occasions. R. at 556, 563, 577, 582, 597.

Additionally, the ALJ also noted that Plaintiff twice stated that her menstrual cycle triggered her migraines. R. at 18, 356, 369. Plaintiff had a hysterectomy on June 5, 2019, two weeks before her hearing. R. at 47. Because the hysterectomy resolved one of Plaintiff's claimed migraine triggers, substantial evidence supports the conclusion that Plaintiff no longer suffer from migraines as frequently as she previously alleged.

---

[2] Alternatively, Dr. Zhu stated Plaintiff could decrease use of verapamil. R. at 596.

Though there is evidence in the record supporting Plaintiff's contentions, substantial evidence supports the ALJ's RFC evaluation.

## Conclusion

For the reasons discussed above, the Commissioner's Decision is AFFIRMED.

**IT IS SO ORDERED.**

Date: January 11, 2021 /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT